JUSTICE COTTER
dissenting.
¶33 I would affirm the judgment of the District Court and dissent from our refusal to do so.
¶34 First, I disagree that there is an issue of material fact as to whether the Firm’s independent failure to recognize a problem with the legal description (the property being described as “1.0 acres more or less”) contributed as a cause of Babcock’s damages, as the Court finds at ¶ 24. As the Court points out, Babcock hired the engineering Firm of Morrison-Maierle, to help plan and develop Babcock Meadows. It was Morrison-Maierle, Babcock’s agent, and not the Firm, that devised the legal description of “1.0 acres more or less.” The Firm did nothing more than place on paper the legal description given to it by Babcock’s agent. Moreover, the Court neglects to point out that while the legal description of the property was “1.0 acre more or less,” there was also a metes and bounds description of the one-acre tract in question. Thus, its boundaries were easily ascertainable.
¶35 However, I find a larger problem with the Court’s analysis of this case in general. The essence of this case is that Babcock made a poor decision in the first place by giving Haggerty the option to buy back one acre, and now wants to blame the Firm for it. Babcock admits as much in its briefs on appeal, stating: “Babcock never wanted to sell Haggerty her own house. Babcock only wanted to buy three acres... Babcock wanted to be a buyer but instead ended up warranting one acre to Haggerty [sic] which it never had an interest because of Lilly’s [the Firm’s] mistake.” It further argues that"... had the Berg Law Firm put together the precise agreement that the parties bargained for... *376 then the parties would have known in 1993 whether they had a meeting of the minds.” Babcock thus argues on appeal that the acquisition of that last acre, which became the ultimate stumbling block in the transaction, was accomplished because of the Firm’s mistake. I have a significant problem with Babcock’s logic.
¶36 As the Court points out at ¶ 3, Babcock is a partnership established for the purpose of developing and selling real estate in Bozeman, Montana. It found Haggerty’s property “not necessary but desirable” for the development of Babcock Meadows. As the Court goes on to state, an important issue in the negotiations between Haggerty and Babcock was Haggerty’s desire to keep one acre of her property and her home after her parcel was added to the Babcock Meadows Subdivision. Thus, it is clear that Babcock was well aware of Haggerty’s desire to retain her one acre of property before it hired the Berg Firm to draft the purchase agreements. Babcock even advised the Firm that Haggerty might be difficult to deal with. Given Babcock’s sophistication as a real estate developer, its knowledge of the requisites of the residential subdivision it wished to develop, and its understanding of the difficulties that dealings with Haggerty might present, one would think that Babcock would scrutinize the purchase agreement drafted by the Berg Firm with these concerns paramount in its mind. But for whatever reason, Babcock signed the revised purchase agreement, which specifically obligated it to purchase the entire four-acre parcel from Haggerty, while allowing Haggerty to retain an irrevocable option to purchase a parcel of that property amounting to 1.0 acres, more or less.
¶37 There is no allegation that the buy-sell agreement was so difficult to comprehend that Babcock did not know what it was signing. This being so, I would conclude that Babcock is in no position to now sue its own law firm for malpractice for the way it drafted an agreement which Babcock, being a sophisticated buyer of real estate, evidently understood and still signed. If Babcock wanted three acres and no option all along, as it argues on appeal, it should have declined to sign the document as drafted.
¶38 It is a well-established maxim of law that “acquiescence in error takes away the right of objecting to it.” Section 1-3-207, MCA. In Goodman Realty, Inc. v. Monson (1994), 267 Mont. 228, 883 P.2d 121, this Court held that “a person who is not acting under mistake or fraud and who acquiesces in an error loses his right to object to the error.” (citing Schillinger v. Huber (1958), 133 Mont. 80, 320 P.2d 346). While Goodman and Schillinger are factually distinct from the case before *377 us[1], such distinction does not minimize the application of the rule. Babcock knew the terms and conditions it wanted in the purchase agreement. It nonetheless signed a purchase agreement that did not contain those terms and conditions. Having done so, it should now be estopped from pointing the finger of blame at someone else.
¶39 For the reasons expressed above, I also disagree with the Court’s conclusion that there is an issue of material fact as to whether the Firm followed the requisite standard of care when it drafted the escrow agreement for the purchase of the Haggerty property. First of all, the escrow instructions are not in the record the parties have provided to this Court, so it is impossible to determine whether the instructions were poorly or well-drafted. The record also fails to reflect who drafted the instructions. Often, escrow agents supply their own form sets of escrow instructions. However, even if we presume that it was the Firm that drafted the instructions, the fact remains that the problems started with Babcock’s execution of the purchase agreement. It was that document that spawned the problems between Babcock and Haggerty. The escrow instructions did nothing more than implement its terms.
¶40 I think we have made this case far too complicated. Because it foresaw problems with Haggerty, Babcock should have read what it signed to ensure that the document accomplished its wishes. Instead, Babcock signed the instrument of its own demise. I would not place the blame for the ensuing problems at anyone’s feet but Babcock’s. I would therefore affirm the order of summary judgment, and dissent from our refusal to do so.
JUSTICES NELSON and RICE join in the foregoing dissent.

 In both cases, this rule was applied to a dispute between contracting parties wherein one party knew of an error in the details of the contract but chose to sign it anyway.